IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| SUSIE M. GUEHRER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| vs. ) | No. 07-4262-CV-C-JCE-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

Plaintiff is appealing the final decision of the Secretary denying her application for disability insurance benefits and supplemental security income ["SSI"] benefits under Title II and XVI of the Act, 42 U.S.C. §§ 401, 1381 et seq. Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be reversed.

Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one

1

position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they

2

Case 2:07-cv-04262-JCE   Document 16   Filed 09/22/09   Page 2 of 13

are inconsistent with the evidence in the record as a whole.  Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

## Discussion

Plaintiff, who was 49 years old at the time of the hearing before the ALJ, has a tenth grade education.  She alleges that she is disabled because of carpal tunnel syndrome, migraines, breathing problems, shoulder pain, a slipped disc in her lower back, right leg weakness and right foot numbness due to her back condition, heavy legs, depression, and nervousness.  She has past relevant work as a housekeeper and food service worker/kitchen helper.

At the hearing before the ALJ, plaintiff testified that she finished the tenth grade in school, but did not have a General Equivalency Diploma or any vocational training.  She does have a driver's license, but has problems driving because of heaviness in her legs and because of her vision.  She stopped working because she could no longer perform her job duties, due to breathing problems, low back pain, and her legs. She has carpal tunnel syndrome, and has had surgery on her right hand, which did not provide her with any relief.  She went back to the surgeon, who suggested that they would have to do surgery again, but she refused.  The first surgery was very painful.  She has continuous right hand pain in the palm with numbness and swelling, and has problems dropping things.  Her entire hand hurts, up into her forearm.  She lacks grip strength.  She could probably write continuously for ten minutes, and then would have to rest her hand for 15 to 20 minutes.  She has numbness in her left hand, and has problems lifting.  She testified that she refused surgery on her left hand because she has some use in it.  She does wear a brace on both hands when she sleeps.  She testified that she had been diagnosed with emphysema.  Exercise makes her shortness of breath worse, as does hot weather.  She does

3

not take any medication for breathing problems. Her doctors have told her that she has a slipped disc that causes low back pain. They did not recommend surgery. She was taken off prescription medication because it was causing liver damage; she testified that she has been diagnosed with liver disease, through liver function tests. It was her testimony, however, that she has had no treatment for it, nor any symptoms. She has been prescribed Hydrocodone and Ranitidine for pain. Next to the right hand pain, her worse pain is in her low back. The low back pain is about 8 on a 1-10 scale; it travels down her right leg to her ankle, plus she has numbness in her foot. She also has weakness in that leg, and it has given out on her. She takes pain medication, but it doesn't help much. She elevates her legs for the pain. She can walk about ten to fifteen minutes before she has to sit; can sit about 45 minutes; and can lift about 12 pounds with both hands. She could not get through a day without lying down because of pain and fatigue. When she sits for too long, her back pain worsens. It takes about 10 to 15 minutes of walking around before she can sit down again for an extended period. She might spend about three or fours hours a day with her feet up on an ottoman. She takes several naps a day, lying down sometimes as many as five times a day for about 45 minutes. She does not actually sleep, but rather, tries to treat the pain by resting. At night, she only gets about three hours of sleep. Plaintiff also has bursitis in her right shoulder, which causes pain when she lifts her arm up over her head. She stated that her physical problems started getting bad in 2003. She admitted that she is a heavy smoker. She stated that when she walks a short distance, she is hampered both by shortness of breath and lower back pain. Plaintiff testified that she could not perform any type of job, even with normal breaks, because she would have to lie down frequently because of pain. It was her testimony that no doctor has put any work restrictions on her. Plaintiff testified that

4

she has never had any physical therapy, but that she does use a heating pad and cold packs for pain.

Regarding her mental problems, plaintiff stated that she suffers from depression and nervousness, which was diagnosed in 2003. She believes her emotional condition would interfere with her ability to work because her depression causes her not to want to be around anyone. She has problems sleeping, doesn't eat, and has low energy. She is nervous and fearful, and has bad days about four times a week when she sits in her room by herself. The depression or nervousness makes it hard for her to get things done, and hard to concentrate. Feeling depressed has interfered with her work performance, causing her to leave work at times. She doesn't really know what happens to her–just that her emotions have been a problem. She went to see a doctor about her nervousness in 2003, who recommended that she come back for treatment if she thought she needed it. She was prescribed Zoloft, which she still takes, and which she believes helps. It makes her happy for a while, but she still has episodes of nervousness, crying spells, and loss of concentration, about three times a week. When this happens, she is sad and crying all day. She believes that pain aggravates her depression. She also takes Ambien for sleeping, although she still usually only gets about three hours of sleep at night.

Plaintiff can do some housework , such as sweeping and doing dishes, except on the days when she is having problems with depression. She doesn't have any hobbies and seldom goes shopping.

The ALJ found that plaintiff has not engaged in substantial work activity since the alleged onset date of disability, June 16, 2003. He found that the medical evidence established that plaintiff suffers from carpal tunnel syndrome with minimal limitations, obstructive pulmonary disease, facet joint arthropathy of the lumbosacral spine, major depression, and a post-traumatic stress disorder. The ALJ found that plaintiff was partially credible. He found that plaintiff had the residual functional capacity ["RFC"] to lift, carry, push or pull twenty pounds occasionally and ten pounds frequently; that she can sit eight hours in a workday; stand and/or walk a total of six hours; can occasionally balance, stoop, kneel, crouch, crawl and climb ramps or stairs, but cannot climb ladders, ropes or scaffolds; must avoid vibration, hazards, pulmonary irritants and extreme cold and humidity; and has moderate limitations in performing work within a schedule, maintaining regular attendance, being punctual, working in coordination with others, completing a normal workday and workweek without interruptions from psychological symptoms, interacting appropriately with the general public, responding to supervisors, and responding to changes in the work setting. It was his decision that she is able to perform her past relevant work as a food service worker/kitchen helper, based on the credible vocational expert testimony. Therefore, it was the ALJ's finding that plaintiff is not under a disability as defined by the Act.

Plaintiff contends that the ALJ's decision should be reversed because he erred by failing to assess her mental residual functional capacity ["MRFC"]; erred by failing to assess her physical residual functional capacity ["PRFC"]; and erred in his credibility finding. Plaintiff focuses her argument on the fact that the ALJ refused to give great weight to the opinion of

plaintiff's treating physician regarding her physical limitations, nor did he give great weight to the opinion of the agency examining psychologist regarding her mental limitations.

While a treating physician's opinions are ordinarily to be given substantial weight, they must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). The ALJ may reject the opinion of any medical expert if it is inconsistent with the medical record as a whole. See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995). In Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000), the Eighth Circuit Court of Appeals discussed the weight to be given to the opinions of treating physicians, holding that the opinion of a treating physician is accorded special deference under the Social Security regulations. When the record contains no evidence to support the ALJ's residual functional capacity finding other than an assessment by a non-treating physician, that assessment alone cannot be considered substantial evidence in the face of the conflicting assessment of a treating physician. Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1991).

Regarding plaintiff's physical limitations, the record contains treatment records from Dr. Christopher Morse, M.D., from January 9, 2004, through February 21, 2007. Dr. Morse treated plaintiff for low back pain, myofascial pain, pain and numbness in the right upper extremity, bilateral knee pain, and numbness in the right lower extremity. During various stages of her treatment, Dr. Morse prescribed strong pain medicine, including Vicodin and Percocet. The physician prepared a Medical Source Statement–Physical ["MSS-P], dated February 21, 2007, in which he assessed her limitations. He found that she could frequently or occasionally lift or carry five pounds; stand and/or walk a total of two hours during the 8-hour workday; stand

7

and/or walk continuously on a regular basis for ten minutes; sit a total of five hours; and sit continuously for two hours. He found that she was limited in her ability to push and/or pull by left and right wrist pain and low back pain; that she should never climb, balance, stoop, kneel, crouch or crawl; she could occasionally or rarely reach, handle, finger, and feel, and that she has environmental restrictions around heights and machinery because of her potential to fall, as well as dust and fumes, because of her Chronic Obstructive Pulmonary Disease ["COPD"]. Dr. Morse described the conditions that created these impairments as low back pain, right knee pain, bilateral wrist pain, and COPD. He opined that it would be necessary for plaintiff to rest for 30 to 60 minutes during an 8-hour period, depending on the activity; that her impairments were likely to disrupt a regular work schedule, which otherwise accommodates all her other limitations, from one to three times a month, and that the average disruption would likely last 24 hours. In the MSS-P, he listed her diagnoses as COPD, low back pain due to degenerative disc disease, and osteoarthritis of the right knee. It was his opinion that plaintiff is "[u]nlikely to be able to find gainful employment based on limitations." [Tr. 276].

The ALJ gave Dr. Morse's opinion slight weight because he concluded that the findings in the MSS-P were not supported by the doctor's exam results and were "internally inconsistent." [Tr. 16]. This inconsistency was based on his conclusion that, at one point in the report, the doctor had opined that plaintiff could occasionally reach, handle, and finger, and at another point, he stated that she could rarely perform these functions. The ALJ also focused on the fact that part of plaintiff's limitations were attributed to right knee osteoarthritis, which she does not allege as an impairment. He also gave little weight to the assessment because he found it was inconsistent with the record as a whole.

8

According to the Social Security regulations, as well as Eighth Circuit case law, the opinion of a treating physician is accorded special deference, and the ALJ may only discount or disregard that opinion where there is better or more thorough medical evidence, or where a treating physician's opinion is so inconsistent that it undermines the credibility of such opinions.

After reviewing the record as a whole, it cannot be said that there is substantial evidence in the record to reject the opinion of Dr. Morse, the treating physician. The fact that the doctor qualified plaintiff's ability to reach, handle, and finger as being on an occasional or rare basis is not, in this Court's opinion, the type of inconsistency that would undermine the doctor's credibility to the point of virtually disregarding it. It should be noted that the form itself limited the physician's choices; under 'B. Other Physical Factors," the checklist for reaching, handling, fingering, and feeling gave choices of "Constant, Frequently, Occasionally, and Never." [Tr. 274]. The doctor checked "Occasionally." Under the section "2. REPETITIVE USE OF HANDS," the checklist for these same factors gave the choices of "Rarely, Occasionally, Frequently, and Constantly." [Tr. 275]. In that section, the doctor checked "Rarely." Because he was not given the same choices in both sections, i.e., he had to choose between "Occasionally" and "Never" under "Other Physical Factors," the Court cannot say that his decision to choose "Occasionally" wholly undermines his credibility. Additionally, under "REPETITIVE USE OF HANDS," "Occasionally" was defined as "(less than 1/3 of 8 hrs)," while "Rarely" was defined as "(no sustained)." [Tr. 275]. The fact that the doctor chose "Rarely" when given more of a choice is quite simply not the kind of inconsistency that should or does raise any credibility concern. By the same token, the fact that the treating physician found plaintiff's knee condition to be a serious impairment when she did not allege it to be

9

Case 2:07-cv-04262-JCE   Document 16   Filed 09/22/09   Page 9 of 13

cannot be held against plaintiff. The fact is that Dr. Morse treated plaintiff for over three years, during which time he prescribed strong pain medication for documented complaints including, but not limited to, shoulder pain and numbness, mid to low back pain, hand and wrist pain, documented carpal tunnel syndrome, neck pain, myofascial pain, bilateral knee pain, and probable COPD. Plaintiff also underwent carpal tunnel surgery during the time that she was under Dr. Morse's care, as well as a full liver screening. The record indicates, moreover, that plaintiff continued to experience problems post-surgery, including pain, weakness, and numbness, which were reflected in Dr. Morse's MSS-P. Rather than relying on the opinion of the treating physician, the ALJ gave more weight to a consultative examiner, who met with plaintiff in 2006, eight months after surgery. At that time, plaintiff complained of carpal tunnel syndrome, hand and foot numbness, migraines, breathing problems, shoulder pain, back pain, and right knee pain. She continued to complain of tingling and numbness in her right palm. She stated that her shoulder pain was worse when she lifted her arms over her head. She also continued to complain of low back and leg pain. After performing some diagnostic tests, including range of motion, the doctor indicated under "Impression" that plaintiff suffers from carpal tunnel syndrome, migraine headaches, by history, COPD, chronic shoulder pain, and chronic low back pain. Under "Medical Source Statement," he made a remark regarding her ability to be able to understand and carry out instructions. He then concluded that she "did appear to be able to perform work-related activities, such as standing, walking, sitting, handling objects, hearing, speaking and traveling during the course of this examination." [Tr. 358-59]. The Court finds that it was error to rely on the opinion of a consultative examiner over that of a treating physician in this case. The Court finds, therefore, that the ALJ erred in finding that the

10

Case 2:07-cv-04262-JCE   Document 16   Filed 09/22/09   Page 10 of 13

treating physician's findings were inconsistent with the record as a whole, and in not affording them the proper weight.

Similarly, the ALJ rejected the opinion of a consulting, examining psychologist, relying instead on the opinion of an examiner who conducted a record review of Dr. Markway's Medical Source Statement-Mental ["MSS-M"].

Dr. Markway diagnosed plaintiff with major depression, recurrent; post-traumatic stress disorder; possible borderline intellectual functioning and learning disabilities; and chronic pain. She administered several subtests of the Neurobehavioral Cognitive Status Examination when plaintiff was referred to her for a psychological evaluation on March 3, 2006. The conclusions reached by Dr. Markway in her report are substantiated by the notations in the record regarding plaintiff's performance in answering questions during the examination, such as the fact that it took her five minutes to remember three out of four words presented, and by her overall depressed state. Plaintiff described many years of abuse by a former spouse, and the doctor concluded that plaintiff was suffering from post-traumatic stress disorder because of her daily thoughts about the physical abuse from her former husband; daily nightmares; her belief that she can feel his presence at night and actually see him at the edge of her bed; nights where she wakes up sweating and screaming; a strong startle reflex; and her fear of people. The doctor also noted that plaintiff sometimes has flashbacks about the trauma and tries to avoid things associated with it.

Dr. Markway assessed her with a GAF score of 45, which denotes serious symptoms, or any serious impairment in social, occupational, or school functioning, according to the Diagnostic and Statistical Manual of Mental Disorders. It was also the doctor's conclusion that

11

her "ability to interact socially and adapt to her environment is markedly to extremely limited due to her depression and posttraumatic stress disorder." [Tr. 356]. Plaintiff submits that Dr. Markway's report is the one opinion from an examining source, and that the ALJ erred in not affording it greater weight.

Having fully reviewed the record, the Court finds that the ALJ erred in rejecting the opinion of Dr. Markway, the only examining source regarding plaintiff's mental health limitations, without adequately explaining his reasons for doing so. Rather than relying on her opinion, he instead relied on the opinion of a non-examining source, Dr. Frisch, who conducted only a record review of Dr. Markway's report, and reconfigured that report to indicate a lesser degree of severity. The Court finds that there is not substantial support in the record as a whole to support the ALJ's decision to not afford greater weight to Dr. Markway's opinion. The degree of limitations suggested by Dr. Markway were consistent with her examination and testing of plaintiff, and when posed to the vocational expert, resulted in a conclusion that plaintiff would be unable to perform her past relevant work.

After a full review of the record and the ALJ's decision, the Court finds that there is not substantial evidence in the record as a whole to support the ALJ's decision that plaintiff's impairments were not disabling. The record indicates that plaintiff has had a history of back, hand, and shoulder pain, and suffers from significant mental disorders. The ALJ erred in discrediting plaintiff's treating physician, as well as the one source who examined her regarding her mental limitations, whose opinions were otherwise supported by the record as a whole. Accordingly, the Court finds that the decision should be reversed.

It is hereby

12

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted. It is further

ORDERED that, pursuant to 42 U.S.C. § 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.

/s/ James C. England
 JAMES C. ENGLAND, CHIEF
United States Magistrate Judge

Date:   9/22/09